# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| T-C FORUM AT CARLSBAD, LLC, a Delaware limited liability company,<br><br>Plaintiff,<br><br>v.<br><br>THOMAS ENTERPRISES, INC., a Georgia corporation; and DOES 1-10, inclusive,<br><br>Defendants. | Case No. 16-cv-2119 DMS (BGS)<br><br>**ORDER GRANTING MOTION FOR DEFAULT JUDGMENT** |

Pending before the Court is Plaintiff T-C Forum at Carlsbad, LLC's motion for default judgment. Defendant Thomas Enterprises, Inc. did not file an opposition to the motion. For the following reasons, the Court grants the motion.

**I.**

**BACKGROUND**

Plaintiff owns a shopping center known as "Forum at Carlsbad," "Forum Carlsbad," and "The Forum – Carlsbad." Plaintiff discovered Defendant using the "Hillside Forum" designation to identify a planned shopping center located across the street from Plaintiff's shopping center. On June 22, 2016, Plaintiff sent a cease and desist letter to Defendant. (Compl. ¶ 21, Ex. A.) The letter advised Defendant

that it must cease using the "Hillside Forum" designation on its shopping center and related business services because it was confusingly similar to Plaintiff's "Forum at Carlsbad" mark, and any continued use of such designation would give rise to several causes of action against Defendant. (*Id*.) On July 27, 2016, Defendant responded, disagreeing with Plaintiff. (Compl. ¶ 23, Ex. B.)

Thereafter, on August 23, 2016, Plaintiff filed a Complaint against Defendant, alleging eleven causes of action: (1) service mark infringement of unregistered service mark, in violation of 15 U.S.C. § 1125(a), (2) false designation of origin/false advertising, in violation of 15 U.S.C. § 1125(a), (3) false endorsement, in violation of 15 U.S.C. § 1125(a), (4) trade name infringement, in violation of 15 U.S.C. § 1125(a), (5) unfair competition, in violation of 15 U.S.C. § 1125(a), (6) state statutory trade name infringement, in violation of Cal. Bus. & Prof. Code §§ 14400 & 14411, (7) common law unfair competition, (8) common law trade name infringement, (9) common law misappropriation, (10) violation of Cal. Bus. & Prof. Code § 17500, and (11) statutory unfair competition, in violation of Cal. Bus. & Prof. Code § 17200. (Comp. ¶¶ 29–106.) On October 25, 2016, Plaintiff filed a proof of service, showing that it properly served Defendant's registered agent by substituted service. When Defendant failed to respond to the Complaint, Plaintiff filed a request for entry of default, which the Clerk of Court granted on November 29, 2016. Subsequently, on December 28, 2016, Plaintiff filed a motion for default judgment.

On January 20, 2017, Defendant filed a motion to set aside the entry of default. The Court granted Defendant's motion and ordered Defendant to respond to the Complaint by April 25, 2017. Moreover, the Court conditioned the setting aside of the default by requiring Defendant to reimburse Plaintiff for costs it had incurred as a result of Defendant's conduct. Defendant, however, has not responded to the Complaint nor did it pay Plaintiff attorneys' fees and costs as ordered by the Court.

On April 27, 2017, Plaintiff filed a second request for entry of default, which

was granted on the same day. Subsequently on May 26, 2017, Plaintiff filed the present motion.

## II.
## DISCUSSION

### A. Default Judgment

A court may grant a default judgment upon application of a party. Fed. R. Civ. P. 55(b)(2). Granting or denying a default judgment under Rule 55(b) is within the court's discretion. *Eitel v. McCool*, 782 F.2d 1470, 1471 (9th Cir. 1986). In making this determination, a court considers the following factors, commonly referred to as the *Eitel* factors: "(1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits." *Id.* at 1471–72. When weighing these factors, the well-pleaded factual allegations of the complaint are taken as true, except for those allegations relating to damages. *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987); *see also* Fed. R. Civ. P. 8(b)(6).

Based on the factors announced in *Eitel*, the Court concludes that default judgment is appropriate. First, one of the factors is whether the default was due to excusable neglect. It is highly unlikely that Defendant's default is due to excusable neglect as this is its second default. When Defendant moved to vacate the first entry of default, the Court granted its request and ordered it to respond to the Complaint by April 25, 2017. Moreover, the Court conditioned the setting aside of the default by requiring the Defendant to pay Plaintiff reasonable attorneys' fees and costs it had incurred because of Defendant's conduct. Nevertheless, Defendant has failed to comply with the Court's orders. To date, Defendant has not responded to the Complaint nor has it paid Plaintiff reasonable attorneys' fees and costs as ordered

by the Court. Therefore, this factor weighs in favor of granting default judgment.

Next, because Defendant has refused to participate in this lawsuit, no possibility of dispute concerning material facts has been presented. In any event, the Court takes all factual allegations in the Complaint as true in light of the entry of default. *See Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Upon review of the Complaint, the Court finds that Plaintiff has adequately stated claims under the Lanham Act and related state law and common law claims. Therefore, these factors also weigh in favor of granting default judgment.

Finally, while "public policy favoring disposition of cases on their merits weighs against default judgment, that single factor is not enough to preclude it." *Rio Props., Inc. v. Rio Int'l Interlink,* 284 F.3d 1007, 1022 (9th Cir. 2002). Proceeding with the instant litigation would be futile given Defendant's failure to participate in this action. Moreover, the denial of this motion would likely result in prejudice to Plaintiff because it would be left without resources in the matter. These factors favor default judgment for Plaintiff.

After weighing the *Eitel* factors, the Court finds that default judgment is appropriate.[1] Accordingly, Plaintiff's motion for default judgment is granted.

**B.     Permanent Injunction**

Under the Lanham Act, "the district court [has] the 'power to grant injunctions according to principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right' of the trademark owner." *Reno Air Racing Ass'n v. McCord*, 452 F.3d 1126, 1137 (9th Cir. 2006) (citing 15 U.S.C. § 1116(a)). In order for the Court to grant a permanent injunction, Plaintiff must demonstrate the following: "(1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate

---

[1] The fourth factor, the sum of money at stake in the action, is inapplicable to the present case because Plaintiff does not request monetary damages as it only seeks a permanent injunction and sanctions.

for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Here, Plaintiff requests a permanent injunction against Defendant as follows:

1. That Defendant, its officers, directors, principals, owners, agents, servants, employees, representatives, affiliates, associates, partially or wholly-owned subsidiaries, assignees, successor entities or individuals, and all persons and/or entities in concert or participation with Defendant, directly or indirectly, be preliminarily and permanently enjoined and restrained perpetually from:

    A. infringing the "Forum at Carlsbad," "Forum Carlsbad," and "The Forum – Carlsbad" unregistered Service Marks (hereinafter "Plaintiff's Service Marks") which have become distinctive in the public's mind and caused the public to associate Plaintiff's Property located at 1923 Calle Barcelona, Carlsbad, California 92009 (hereainafter "Plaintiff's Property") with Plaintiff's Service Marks;

    B. infringing the "Forum at Carlsbad," "Forum Carlsbad," and "The Forum – Carlsbad" Trade Names (hereinafter "Plaintiff's Trade Names") which have become distinctive in the public's mind and caused the public to associate Plaintiff's Property with Plaintiff's Trade Names;

    C. using the term "Hillside Forum," any phonetic equivalent or abbreviation therefor, or any mark using the designation "Forum" alone or in combination with any other word or design in its business affairs, including but not limited to as a trademark or trade name, or any other designation confusingly similar to Plaintiff's Service Marks and/or Plaintiff's Trade Names, in connection with Defendant's services, including the sale, offering for sale, leasing, offering to lease

|   |   |
|---|---|
|   | commercial or retail real estate, and/or to identify a shopping center and services related thereto; |
| D. | promoting or marketing services in any way that tends to deceive, mislead, or confuse the public into believing that Defendant's services and/or shopping center is in any way sanctioned by Plaintiff or affiliated with Plaintiff's Property or Plaintiff's "Forum at Carlsbad," "Forum Carlsbad," and "The Forum – Carlsbad" shopping center; |
| E. | otherwise competing unfairly with Plaintiff in any manner; |
| F. | passing off, inducing, or enabling others to sell or pass off any sale, offering for sale, leasing, offering to lease commercial or retail real estate, and/or to identify a shopping center or any other properties under or in connection with the term "Forum", or any designation confusingly similar thereto; and |
| G. | committing any acts calculated to cause purchasers to believe any goods or services provided by Defendant are sponsored by, approved by, connected with, guaranteed by or offered, sold, or leased by Plaintiff, or under the control or supervision of Plaintiff. |

After reviewing the record, the Court concludes a permanent injunction is appropriate in this case. Plaintiff has made a sufficient showing that it will suffer irreparable harm absent an injunction and that monetary damages are inadequate to compensate for that harm. Plaintiff alleges "[it] will suffer great and irreparable injuries, for which damages would not afford adequate relief, in that said damages would not adequately compensate for injury to Plaintiff's service marks and trade names, business reputation, goodwill, and customer base, and Defendant's conduct, if allowed to continue, would inevitably result in damage to Plaintiff's retail real estate holdings." (Compl. ¶ 35.) As to the balance of hardships, Plaintiff's interest in maintaining the integrity of its service and trade marks and protecting its goodwill outweighs any interest that Defendant may have in continued infringement. Finally,

the public interest in maintaining vigorous protection for intellectual property rights also favors an injunction. These factors weigh in favor of granting Plaintiff's request for a permanent injunction.

Generally, "an injunction must be narrowly tailored … to remedy only the specific harms shown by [a plaintiff], rather than 'to enjoin all possible breaches of the law.'" *Price v. City of Stockton*, 390 F.3d 1105, 1117 (9th Cir. 2004) (quoting *Zepeda v. INS*, 753 F.2d 719, 727 (9th Cir. 1983)). After reviewing Plaintiff's proposed language for the permanent injunction, the Court finds that the language in paragraphs D, E, and G is vague as it is not directed specifically at Defendant's infringing conduct, but rather, it is a general proscription against Defendant engaging in any conduct that negatively affects Plaintiff's business. Accordingly, Plaintiff is entitled to a permanent injunction against Defendant as requested, with the exception of paragraphs D, E, and G.

**C.    Attorneys' Fees**

Plaintiff seeks imposition of sanctions in the form of attorneys' fees pursuant to the Court's inherent powers and Civil Local Rule 83.1. Specifically, Plaintiff requests attorneys' fees in the amount of $31,453.46, consisting of $18,453.46 awarded pursuant to the Court's order issued on April 11, 2017, and $13,435.72 incurred in connection with preparing supplemental briefs regarding attorneys' fees and costs, second request for entry of default, and the instant motion.

"All federal courts are vested with inherent powers enabling them to manage their cases and courtrooms effectively and to ensure obedience to their orders.... As a function of this power, courts can dismiss cases in their entirety, bar witnesses, award attorney's fees and assess fines." *F.J. Hanshaw Enters., Inc. v. Emerald River Dev., Inc.*, 244 F.3d 1128, 1136 (9th Cir. 2001) (citations omitted). Sanctions are an appropriate response to "willful disobedience of a court order ... or when the losing party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Fink v. Gomez*, 239 F.3d 989, 991 (9th Cir. 2001) (internal quotation marks and citations

omitted). Further, Rule 83.1(a) permits the Court to order sanctions for "[f]ailure of counsel or of any party to comply with these rules, with the Federal Rules of Civil or Criminal Procedure, or with any order of the court[.]" Civ. L. R. 83.1(a).

As explained above, this is Defendant's second default. When the Defendant moved to vacate the first entry of default, the Court granted its request and ordered it to respond to the Complaint by April 25, 2017. Moreover, the Court has ordered Defendant to reimburse Plaintiff reasonable attorneys' fees and costs it had incurred due to Defendant's conduct. Nevertheless, Defendant has failed to comply with the Court's orders. To date, Defendant has not responded to the Complaint nor has it paid Plaintiff attorneys' fees and costs. Defendant's refusals to participate in this lawsuit and to comply with the Court's orders have resulted in substantial delay in this case and forced Plaintiff to file a second entry of default and motion for default judgment, thereby incurring additional attorneys' fees and costs. Accordingly, pursuant to the Court's inherent power to administer justice and Rule 83.1, a sanction against Defendant in the form of attorneys' fees is clearly warranted.

The amount of fees awarded is a matter within the trial court's discretion. *Jankey v. Poop Deck*, 537 F.3d 1122, 1132 (9th Cir. 2008). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983).

Plaintiff seeks fees based on an hourly rate of $430 for Partner Matthew A. Newboles and $325 for Of Counsel Stephen Z. Vegh. For the reasons explained in the April 11, 2017 order, the Court finds the hourly rates reasonable.

Next, Plaintiff seeks to recover fees for 19.2 hours of work performed in connection with preparing supplemental briefs regarding attorneys' fees and costs. It is notable the billing entries from March 2 and 3, 2017 are not related to work on the supplemental briefs. Therefore, a deduction of 0.5 hours is warranted. Next, Plaintiff requests fees for 12.3 hours for preparing a second request for entry of

default. The hours billed on April 11, 2017 through April 21, 2017, and April 26 and 27, 2017 appear unreasonable because the billing entries pertain to unrelated activities. Therefore, the Court deducts 5.3 hours. Lastly, Plaintiff seeks to recover fees for 8.5 hours expended in connection with the second motion for default judgment. The requested number of hours appears to be reasonable. Accordingly, the Court allows recovery of 34.2 hours.

## III.
## CONCLUSION

For these reasons, Plaintiff's motion for default judgment is granted. A permanent injunction is entered in favor of Plaintiff as follows:

1. That Defendant, its officers, directors, principals, owners, agents, servants, employees, representatives, affiliates, associates, partially or wholly-owned subsidiaries, assignees, successor entities or individuals, and all persons and/or entities in concert or participation with Defendant, directly or indirectly, be preliminarily and permanently enjoined and restrained perpetually from:

   A. infringing the "Forum at Carlsbad," "Forum Carlsbad," and "The Forum – Carlsbad" unregistered Service Marks (hereinafter "Plaintiff's Service Marks") which have become distinctive in the public's mind and caused the public to associate Plaintiff's Property located at 1923 Calle Barcelona, Carlsbad, California 92009 (hereainafter "Plaintiff's Property") with Plaintiff's Service Marks;

   B. infringing the "Forum at Carlsbad," "Forum Carlsbad," and "The Forum – Carlsbad" Trade Names (hereinafter "Plaintiff's Trade Names") which have become distinctive in the public's mind and caused the public to associate Plaintiff's Property with Plaintiff's Trade Names;

   C. using the term "Hillside Forum," any phonetic equivalent or

abbreviation therefor, or any mark using the designation "Forum" alone or in combination with any other word or design in its business affairs, including but not limited to as a trademark or trade name, or any other designation confusingly similar to Plaintiff's Service Marks and/or Plaintiff's Trade Names, in connection with Defendant's services, including the sale, offering for sale, leasing, offering to lease commercial or retail real estate, and/or to identify a shopping center and services related thereto; and

D. passing off, inducing, or enabling others to sell or pass off any sale, offering for sale, leasing, offering to lease commercial or retail real estate, and/or to identify a shopping center or any other properties under or in connection with the term "Forum", or any designation confusingly similar thereto.

Moreover, Defendant shall make payment to Plaintiff in the amount of **$29,967.46** within thirty (30) days of this Order for reasonable attorneys' fees, consisting of $18,453.46 awarded under the Court's April 11, 2017 Order, and $11,514 for fees related to preparing supplemental briefs regarding attorneys' fees and costs, second request for entry of default, and the instant motion. The Clerk of Court is instructed to enter judgment in favor of Plaintiff and close the case.

**IT IS SO ORDERED.**

Dated: August 14, 2017

Hon. Dana M. Sabraw
United States District Judge